UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENT A. ALLEN,

              Plaintiff,

-against-

ANTWAN A. PATTON (BIG BOI); ANTONIO M. REID (HITCO ENTERTAINMENT); BASTIAN LEHMANN (POSTMATES),

              Defendants.

21-CV-3434 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, appearing *pro se*, brought this action asserting claims for appropriation of his ideas for the search engine Google and the social media platform Instagram.[1] By order dated April 22, 2021, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*.

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must

---

[1] Plaintiff does not specify a basis for the Court's jurisdiction in this complaint, but in substantially similar complaints filed the same day, Plaintiff invoked the Court's diversity jurisdiction. *See Allen v. Patton*, ECF 1:21-CV-03457, 2 (S.D.N.Y. filed April 19, 2021) (complaint naming Defendants Patton, Reid, and William Wang, CEO of Vizio); *Allen v. Patton*, ECF 1:21-CV-03459, 2 (S.D.N.Y. filed April 19, 2021) (complaint naming Defendants Patton, Reid, and Sundar Pichai of Alphabet, and alleging that Plaintiff had the idea for Spotify); *Allen v. Patton*, ECF 1:21-CV-03468, 2 (S.D.N.Y. filed April 19, 2021) (complaint naming Defendants Patton, Reid, and Amazon founder Jeff Bezos).

also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff Kent Allen alleges the following facts. When Plaintiff was eight years old, he lived in Forest Park, a rural area in Georgia. He had the idea for Google (or Google Maps) technology because he "figured we all needed a way to locate each other." (ECF 2 at 6.)

Plaintiff befriended recording artists Big Boi and Andre 3000, who formed the musical group Outkast. Plaintiff was also "in reach with" Facebook founder Mark Zuckerburg, who he alleges is his cousin. (Id.)

Plaintiff moved away from Forest Park at some point during "the .com b[oo]m." (Id.). During that time, Plaintiff "carried" the domain name Google, but it "was compromised" and he was unable to renew it because someone else purchased the domain name. (Id.) "Only a few close friends knew of [Plaintiff's] idea" for Google. (Id.) Plaintiff discussed with Big Boi and Andre 3000 his inability to renew the Google domain name, but they said they did not know anything about it. Plaintiff filed a police report about the incident and was told that police had figured out who purchased the domain name and cautioned that individual "not to renew the domain" when it expired one year after purchase. (Id.)

When Plaintiff was nine years old, he moved to Decatur, Georgia, where he "helped develop such artists as Bow Wow, Outkast, Ludacris, Lauren London" and later "Jeeezy, and Keyshia Cole." (Id.) Plaintiff was also waiting for the Google domain purchaser's one-year registration to expire. In addition, Plaintiff "started to think of other business domains," and he "composed a list of domains to assign each artist." (Id.) Plaintiff's list included the domain names: Postmates, "Kangeroo," and Amazon; both Big Boi and Andre 3000 saw Plaintiff's list. Plaintiff "purchased each domain and the same thing happened" that had happened with his Google domain – that is, the domain names were compromised and someone else was able to purchase them. (*Id.* at 7.)

Later, while Plaintiff was present, Big Boi purchased the domain "heymoney.com," which he intended as a "trading app." (Id.) After seeing this, Plaintiff was able to determine "which one of his friends was doing this," that is, that Big Boi was involved with Plaintiff's

3

compromised domain names. Plaintiff then moved away from the area because he "was being bullied by the local kids." (Id.)

Plaintiff also had the idea for Instagram, and when he was 23, he "gave the idea" to Keyshia Cole "to be released to the public." (Id.) Plaintiff's "idea was for entertainers to stay in reach with each other and also market to the general public." (Id.)

Many of the artists that Plaintiff "helped develop" are "against" him. (*Id.* at 8.) He was unsuccessful in contacting them and "was made a mockery of on Instagram." (Id.) If Plaintiff had been "compensated [for his] ideas," he would have been able to help his mother with her medical expenses.

At 26 years old, Plaintiff began attending college and forgot about these matters from his childhood. At that point, Plaintiff resided in Pompano Beach, Florida. Because many of the individuals from Plaintiff's childhood were involved in businesses near Plaintiff's home, he was fired without cause from many jobs. He then worked as a self-employed accountant but eventually stopped doing so due to the "mockery [he] incurred on social media," including on Instagram and Facebook. Plaintiff seeks to be "compensated and . . . given credit for [his] ideas." (*Id.* at 9.)

Plaintiff names as defendants in this action Antwan A. Patton, who uses the stage name Big Boi; Antonio M. Reid, of Hitco Entertainment; and Bastian Lehmann, a co-founder of Postmates. Plaintiff identifies himself as a citizen of Florida, and alleges that Patton is a citizen of Georgia, and that Reid and Lemann are both citizens of California. Plaintiff seeks more than $12 million, based on "the company valuation of Postmates." (*Id.* at 11.)

# DISCUSSION

A. **Appropriation of Ideas**

Plaintiff's allegations that he had the idea for the Instagram platform and Google's search engine and map software but was not credited or compensated for these ideas could be liberally construed as seeking relief for copyright or patent infringement.

1. **Relief Under the Copyright Act**

The Copyright Act gives the owner of a copyright certain "exclusive rights," 17 U.S.C. § 106, to protect "original works of authorship," 17 U.S.C. § 102(a). "[T]he author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). To establish copyright infringement, a claimant must show: (1) ownership of a valid copyright; and (2) unauthorized copying of constituent elements of the work that are original. *Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Jorgenson v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).

However, "copyright does not protect an idea, but only the expression of an idea." *Richard J. Zitz, Inc. v. Pereira*, 225 F.3d 646 (2d Cir. 2000) (citing *Kregos v. Associated Press*, 3 F.3d 656, 663 (2d Cir. 1993)); *see* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea [,] . . . concept, [or] principle, . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work."); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985) ("[N]o author may copyright . . . ideas."); *Williams v. Chrichton*, 84 F.3d 581, 589 (2d Cir. 1996) ("Any similarity in the theme of the parties' works relates to the unprotectible idea of a dinosaur zoo."); *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir. 1982) ("Plaintiff cannot copyright the 'idea' of a snowman."); *Dean v. Cameron*, 53 F. Supp. 3d 641, 648 (S.D.N.Y. 2014) ("Plaintiff does

not have a monopoly on the idea of floating or airborne land."); *Castorina v. Spike Cable Networks, Inc.*, 784 F. Supp. 2d 107, 112 (E.D.N.Y. 2011) ("[A] theme of 'referencing significant Americans' is an uncopyrightable idea.").

Here, Plaintiff alleges that when he was eight years old, he had the idea for Google, which the Court understands to mean that he had the idea for the search engine or for the map software that are now known as Google and Google Maps. He further alleges that he had the idea for a platform like Instagram that would allow artists to share content with each other and the public. Plaintiff does not allege that at any point he created any software or other tangible expression of these ideas or that he holds any copyright. Because Plaintiff alleges nothing more than that he had an uncopyrightable idea, he fails to state a claim on which relief can be granted under the Copyright Act.

**2. Patent Infringement**

"[T]he act of invention itself vests an inventor with a common law or 'natural' right to make, use and sell his or her invention, absent conflicting patent rights in others." *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578 (Fed. Cir. 1991). But a patent "enlarges the natural right, adding to it the right to exclude others from making, using or selling the patented invention." *Id.* "[O]wnership only of the invention gives no right to exclude, which is obtained only from the patent grant." *Id.* at 1578–79.

The Patent Act of 1952 provides that a civil action for infringement may be brought by "a patentee." 35 U.S.C. § 281. The statute defines "patentee" to include the party to whom the patent was issued and the successors in title to the patent, 35 U.S.C. § 100(d), and has been interpreted to require that a suit for infringement be brought by a party holding legal title to the patent, *Arachnid, Inc.*, 939 F.2d at 1578-79. To state a claim of patent infringement, a plaintiff must allege facts suggesting that the alleged infringer made, used, offered to sell, sold, or

imported a patented invention during the term of the plaintiff's patent and without authority to do so. 35 U.S.C. § 271.

Here, Plaintiff alleges only that he had the idea for something like Google or Instagram – not that he actually developed the technology or was issued a patent. Plaintiff thus fails to state a claim for patent infringement.

**B.      Domain Names**

Plaintiff's allegations that he was deprived of the ability to profit from registration of various well-known domain names, including the domain names Google, Amazon, and Postmates, could be liberally construed as seeking relief for "cybersquatting." The Anticybersquatting Consumer Protection Act (ACPA) amends the Trademark Act of 1946 to create a federal remedy for cybersquatting – that is, for warehousing and trafficking in domain names.[2] *See also Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 496 (2d Cir. 2000) (discussing bad faith intent to profit from domain names).

Plaintiff seems to allege that when he was eight years old, he registered or attempted to register the domain name Google before that domain name was taken. But when it was time to renew his registration, Plaintiff was unable to do so because the domain "was compromised." (ECF 2 at 6). Plaintiff later determined that Antwan Patton (Big Boi) was involved in

---

[2] The ACPA provides, at 15 U.S.C. § 1125(d)(1)(A), that:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and (ii) registers, traffics in, or uses a domain name that—(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; . . . .

7

compromising the domain name (or registering the domain name himself), which Plaintiff surmised based on his having seen Patton register another unrelated domain name — heymoney.com.

Plaintiff does not specify what federal law Defendant Patton's alleged conduct would violate, and Plaintiff's allegations that Defendant Patton disrupted Plaintiff's attempts to profit from registration of domain names do not appear to state a claim under any federal statute. Plaintiff's complaint gives no indication that he has a registered trademark for any word, name, slogan, logo, or symbol, or that Defendants have infringed any trademark he holds. Plaintiff's allegations that he intended to warehouse domain names linked to, and presumably trademarked by, well-known businesses instead appears to be the type of behavior that the ACPA prohibits. Moreover, Plaintiff's allegations about his reasons for believing that Defendant Patton was involved (*i.e.*, that he saw Patton register a different domain name) do not give rise to a plausible inference that Patton "compromised" Plaintiff's domain preventing him from renewing the domain registration. Plaintiff thus fails to state a claim against any Defendant for interfering with his domain registration.

## C.     Diversity Jurisdiction Over State Law Claims

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, the Court has dismissed Plaintiff's federal claims. But it appears that Plaintiff may be able to invoke the Court's diversity jurisdiction under 28 U.S.C. § 1332, in order to assert his state law claims. Plaintiff pleads that he is a Florida citizen, Defendants are citizens of Georgia

and California, and that he seeks damages in excess of $75,000. Even if the Court can exercise diversity jurisdiction over any state law claims, the Court concludes that there are multiple reasons why such claims must be dismissed.[3]

First, any claims based on Plaintiff's allegations that decades ago (1) he thought of the idea for Google and Instagram but did not receive credit or compensation, and (2) Defendants interfered with his domain-name registration would be time-barred, whether they arise under Georgia, New York, or Florida state law. Second, Plaintiff's general idea for a search engine or platform is not sufficiently concrete to be a protectible idea under state law. *See, e.g.*, *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 29-30, 17 N.Y.S.3d 678, 692 (1st Dep't 2015) (a claim for misappropriation of ideas requires a fiduciary or contractual relationship and that idea be "novel and concrete"); *Educ. Sales Programs, Inc. v. Dreyfus Corp.*, 317 N.Y.S.2d 840, 843 (Sup. Ct., N.Y. Cnty., 1970) ("Not every 'good idea' is a legally protectible idea."); *see also Burgess v. Coca-Cola Co.*, 245 Ga. App. 206, 209 (2000) (holding that to succeed on claim for wrongful appropriation of an unpatented or unpatentable idea or product, the idea must be: "1) . . . novel; 2) [disclosed] in confidence; 3) adopted and made use of by the defendant; and 4) sufficiently concrete in its development to be usable"). Thus, even if it were true that Plaintiff had the idea for a search engine like Google or a platform like Instagram, this alone would not establish any right to relief.

---

[3] It is unclear why Plaintiff brings suit in this Court. He alleges that the individual defendants reside outside this district, and appears to allege that the incidents giving rise to his claims took place when he resided in Georgia and Florida. Under 28 U.S.C. § 1391, venue does not appear to lie in this district. Applying New York choice-of-law rules, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 301 (2d Cir. 2000) (citation omitted).

9

**D. Leave to Replead**

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)). But a court has inherent power to dismiss without leave to amend or replead if "the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (citation omitted), or where amendment would otherwise be futile, *Hill v. Curcione*, 657 F. 3d 116, 123-24 (2d Cir. 2011); *see also Shapiro v. McManus*, 136 S. Ct. 450, 455-56 (2015) (holding that federal-question jurisdiction is lacking where the claims are "wholly insubstantial and frivolous," "essentially fictitious," or "obviously without merit" (internal quotation marks and citations omitted)). Because Plaintiff's claims appear to be wholly implausible and granting leave to amend his complaint would be futile, the Court declines to do so.

**E. Litigation History**

On the same day that Plaintiff filed this complaint, he filed four others, in which he also sought waiver of the filing fees. Three of these complaints are virtually identical to this one, except that (1) the other three suits specify that they are brought under the Court's diversity jurisdiction; and (2) each also names Antwan Patton and Antonio Reid of Hitco Entertainment but replaces the co-founder of Postmates with another defendant. *See Allen v. Patton*, ECF 1:21-CV-03457, 2 (S.D.N.Y. filed April 19, 2021) (complaint naming William Wang, CEO of Vizio as a third defendant); *Allen v. Patton*, ECF 1:21-CV-03459, 2 (S.D.N.Y. filed April 19, 2021) (complaint naming Sundar Pichai of Google as a third defendant and also alleging that Plaintiff had the idea for Spotify); *Allen v. Patton*, ECF 1:21-CV-03468, 2 (S.D.N.Y. filed April 19, 2021) (complaint naming Amazon founder Jeff Bezos). In the fourth complaint, *Allen v. Cole*,

ECF 1:21-CV-03450, 2 (S.D.N.Y. filed April 19, 2021), Plaintiff's allegations are substantially similar to those in this complaint, but he names Facebook founder Mark Zuckerburg, Keyshia Cole, and Hartwig Mausch as Defendants and adds allegations that he had the idea for the app "Stash." All of the complaints suffer from defects similar to the defects in this complaint and will be addressed by separate orders.

The Court warns Plaintiff that vexatious or frivolous litigation in this Court may result in an order barring Plaintiff from filing new actions *in forma pauperis* unless he receives prior permission. *See* 28 U.S.C. § 1651.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. Plaintiff's complaint, brought *in forma pauperis* under 28 U.S.C. § 1915(b), is dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: April 30, 2021
      New York, New York

      /s/ Laura Taylor Swain
      LAURA TAYLOR SWAIN
      Chief United States District Judge